## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                   )
SMART SOFTWARE, INC.,              )
                                   )
                Plaintiff,         )
                                   )
v.                                 )            Civil Action
                                   )          No. 15-13814-PBS
PLANNINGEDGE, LLC,                 )
                                   )
                Defendant.         )
_____ _ _____   )


### MEMORANDUM AND ORDER

June 17, 2016

Saris, C.J.

### INTRODUCTION

The plaintiff, Smart Software, Inc., brings this action against the defendant, PlanningEdge, LLC, alleging infringement of its patent claiming a system and method for forecasting intermittent demand to help manage inventory. The defendant has moved to dismiss this case on the ground that the patent claims an abstract idea which is ineligible for patent protection under 35 U.S.C. § 101. After hearing, relying on Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014), this Court **ALLOWS** the defendant's motion to dismiss (Docket No. 23).

## FACTUAL BACKGROUND

All facts are drawn from the complaint and attached documents and are treated as true for the purposes of this motion to dismiss.

Smart Software provides software for enterprise-wide demand forecasting, demand planning, and inventory optimization solutions. On March 20, 2001, the United States Patent and Trademark Office (PTO) issued United States Patent No. 6,205,431 (the '431 Patent) entitled "System and Method for Forecasting Intermittent Demand." Smart Software is the holder of the assignment.

The Detailed Description of the Invention in the '431 Patent describes the inventory management problem as follows:

> In any inventory management problem, one of the critical goals is to balance the need to have stock on hand to satisfy random demand against the cost of maintaining that stock. Efficient management of this tradeoff requires accurate forecasts of the distribution of the total demand that will arise over a lead time needed for stock replenishment. Unfortunately, the intermittent nature of demand for spare parts or high priced capital goods makes forecasting especially difficult. Since demand alternates sporadically between zero and nonzero values, traditional forecasting methods are typically rendered ineffective.

U.S. Patent No. 6,205,431 col. 4 ll. 30-40 (filed Oct. 29, 1998). The '431 Patent "includes an inventory management system that utilizes the theory of economic order quantities under a continuous review model." Id. at col. 4 ll. 41-43. The "review

model determines two quantities for each item, a reorder point and an order quantity" using historical data. Id. at col. 4 ll. 43-45. "When on-hand inventory reaches the reorder point, one orders an amount equal to the order quantity to replenish stock." Id. at col. 4 ll. 45-47.

On August 4, 2015, the plaintiff notified the defendant of its alleged infringing activity. The parties agree that the only patent claims at issue in this case are Claims 1, 10, and 16. The text of the claims follows:

1. A computerized method for forecasting intermittent demand for a lead time, comprising the steps of:

    providing a data set of intermittent data comprising a predetermined number of historical demand values;
    calculating lead time demand values for the lead time, wherein the calculating step comprises the step of sampling values from the historical demand values;
    summing the lead time demand values to provide a lead time demand sum; and
    repeating the calculating and summing steps a predetermined number of times to provide a distribution of lead time demand sums that forecast intermittent demand for inventory requirements.

10. A program product, having a computer usable medium having computer readable code embodied therein that, when executed, comprises:

    means for examining intermittent data comprised of a predetermined number of historical demand values made up of zero and non-zero values;
    means for calculating lead time demand values for the lead time, wherein the calculating means samples values from the historical demand values;
    means for summing the lead time demand values to provide a lead time demand sum;

looping means for generating a plurality of lead
time demand sums;
storing means for storing the plurality of lead
time demand sums; and
means for providing the plurality of lead time
demand sums that forecast inventory requirements.

16. A computer system, comprising:

a processing unit;
a computer system memory accessible to the
processing unit;
a data set comprising intermittent data stored
within the computer system memory, wherein the
intermittent data is comprised of a plurality of
time series values;
a mechanism for examining the intermittent data;
and
a mechanism for generating a plurality of series of
lead time demand values, wherein each series of
lead time demand values is based upon at least one
sampling selection from among the time series
values.

Id. at col. 16 ll. 13-26, 54-67; col. 17 ll. 1-4, 25-37.

## DISCUSSION

## I.   12(b)(6) Standard of Review for a § 101 Claim

Generally speaking, to survive a Rule 12(b)(6) motion to
dismiss, the factual allegations in a complaint must "possess
enough heft" to state a claim to relief that is plausible on its
face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).
"Dismissing a case under Rule 12(b)(6) on the basis of an
affirmative defense requires that (i) the facts establishing the
defense are definitively ascertainable from the complaint and
the other allowable sources of information, and (ii) those facts
suffice to establish the affirmative defense with certitude."

Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006) (internal quotation marks omitted). In a patent case, if unpatentability is raised as an affirmative defense under Rule 12, then dismissal is appropriate if the well-pleaded factual allegations in the complaint, construed in the light most favorable to the plaintiff, establish the defense. Kenexa BrassRing, Inc. v. HireAbility.com, LLC, No. CIV.A. 12-10943-FDS, 2015 WL 1943826, at *2 (D. Mass. Apr. 28, 2015). The key question on a motion to dismiss based on patent eligibility is whether the claims in the patent are eligible for patent protection under a "straightforward application" of § 101 case law. See Esoterix Genetic Labs. LLC v. Qiagen, Inc., 133 F. Supp. 3d 349, 354, 356 (D. Mass. 2015).

The plaintiff argues that it meets the Iqbal/Twombly plausibility standard because a patent is "presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. It contends that the defendant cannot meet its burden of proving invalidity by clear and convincing evidence under § 282 without, at a minimum, a claim construction hearing.

The Federal Circuit has rejected a similar argument, holding: "Although the determination of patent eligibility requires a full understanding of the basic character of the

5

claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." Content Extraction & Transmission, LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming the district court's dismissal of the patent claims as "patent-ineligible under § 101 at the pleading stage"); see also OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1360-62 (Fed. Cir. 2015) (affirming dismissal on the pleadings); Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 717 (Fed. Cir. 2014) (affirming Rule 12(b)(6) dismissal); Modern Telecom Sys. LLC v. Juno Online Servs., Inc., No. SA CV 14-0348-DOC, 2015 WL 1240182, at *7 (C.D. Cal. Mar. 17, 2015). ("[A]fter Alice, courts have frequently decided patent-eligibility on the pleadings."). However, the Federal Circuit cautioned that "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." Bancorp Servs., LLC v. Sun Life Assurance Co. of Can. (U.S.), 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).

Here, the plaintiff fails to identify any claim construction issues that need resolution or any facts in dispute. Nonetheless, it argues that a claim construction hearing is necessary for Claim 10 of the '431 Patent, a means-

plus-function claim, under 35 U.S.C. § 112(f).[1] The plaintiff, however, offers no specific claim construction issue involving Claim 10 that would affect this Court's analysis. Other courts have dismissed infringement suits involving patents with means-plus-function claims on the pleadings based on § 101 eligibility. See, e.g., TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc., No. CIV.A. H-15-1821, 2015 WL 5311059, at *6, *9 (S.D. Tex. Sept. 11, 2015); In re TLI Commc'ns LLC Patent Litig., 87 F. Supp. 3d 773, 804-05 (E.D. Va. 2015).

## II.   Section 101 Eligibility

The defendant argues that the '431 Patent is directed to the abstract idea of forecasting intermittent inventory demand and provides no additional inventive concept to transform the abstract idea into patent-eligible subject matter. The plaintiff responds that its patent merely involves, but is not directed to, an abstract concept, and that the patent applies a

---

[1] "Element in claim for a combination.—An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(f).

statistical method in a novel manner to solve a persistent

problem within the field of inventory management.

The patent statute provides: "Whoever invents or discovers

any new and useful process, machine, manufacture, or composition

of matter, or any new and useful improvement thereof, may obtain

a patent therefor, subject to the conditions and requirements of

this title." 35 U.S.C. § 101. "The Supreme Court, however, has

long interpreted § 101 and its statutory predecessors to contain

an implicit exception: laws of nature, natural phenomena, and

abstract ideas are not patentable." Content Extraction, 776 F.3d

at 1346 (internal quotation marks omitted). The Federal Circuit

has struggled to define the contours of the "abstract ideas"

category. See MySpace, Inc. v. GraphOn Corp., 672 F.3d 1250,

1259 (Fed. Cir. 2012) ("When it comes to explaining what is to

be understood by 'abstract ideas' in terms that are something

less than abstract, courts have been less successful."). The

effort to adequately explain this category "has become

particularly problematic in recent times when applied to that

class of claimed inventions loosely described as business method

patents." Id.

The two key Supreme Court cases addressing the

patentability of business practices and methods are Alice Corp.

Pty. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014) and Bilski v.

Kappos, 561 U.S. 593 (2010). In Bilski, the Court analyzed

whether "a procedure for instructing buyers and sellers how to protect against the risk of price fluctuations in a discrete section of the economy" was patentable under § 101. 561 U.S. at 598. The patent claimed "the use of the abstract idea of hedging risk in the energy market," and employed "well-known random analysis techniques" to help establish some of the inputs into a risk-hedging equation. Id. at 612. The Court held that the concept of hedging, even when reduced to a mathematical formula, was an unpatentable abstract idea. See id. at 611. In reaching its holding, the Court relied on two previous cases dealing with the patentability of mathematical algorithms. Parker v. Flook, 437 U.S. 584, 594 (1978) (holding that a procedure for monitoring the conditions during the catalytic conversion process using a mathematical algorithm was abstract and unpatentable); Gottschalk v. Benson, 409 U.S. 63, 64, 71 (1972) (holding that the claimed "method for converting binary-coded decimal (BCD) numerals into pure binary numerals" was unpatentable under § 101 because it "would be a patent on the algorithm itself").

In Alice, 134 S. Ct. at 2355, the Supreme Court reiterated the two-step analysis to determine whether a patent survives the rabbit-hole of eligibility under § 101 initially set forth in Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289 (2012). Under the Alice/Mayo framework, the Court must

first "determine whether the claims at issue are directed to" a patent ineligible concept, like an abstract idea. Alice, 134 S. Ct. at 2355. If so, the Court must then "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." Id. The Court described step two of this analysis as "a search for an 'inventive concept'—*i.e.,* an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" Id. (quoting Mayo, 132 S. Ct. at 1294) (alteration omitted). Although described as a two-step process, the two steps of the Alice test can be as elusive as the grin of the Cheshire cat.

In Mayo, the Supreme Court addressed the defendant's motion for summary judgment on whether patent claims, which covered processes that help doctors determine the correct drug dosage levels in patients with autoimmune diseases, were eligible under § 101. 132 S. Ct. at 1293-94. The Court held that these claims were not eligible because "the steps in the claimed processes (apart from the natural laws themselves) involve well-understood, routine, conventional activity previously engaged in by researchers in the field." Id. at 1294. In so holding, the Court noted that a process that focuses upon an abstract concept

must also contain other elements "sometimes referred to as an 'inventive concept,'" sufficient to transform the abstract concept into patent-eligible subject matter. See id. (quoting Flook, 437 U.S. at 594).

In Alice, the Supreme Court addressed cross-motions for summary judgment on whether a patent claiming "a computer-implemented scheme for mitigating settlement risk . . . using a third-party intermediary" was patent eligible under § 101 or was drawn to "a patent-ineligible abstract idea." Id. at 2351-52. The claims in Alice were "designed to facilitate the exchange of financial obligations between two parties by using a computer system" as the third-party intermediary. Id. at 2352. The Court held that the claims were "drawn to the abstract idea of intermediated settlement, and that merely requiring generic computer implementation fail[ed] to transform that abstract idea into a patent-eligible invention." Id. The patent claimed "(1) the foregoing method for exchanging obligations (the method claims), (2) a computer system configured to carry out the method for exchanging obligations (the system claims), and (3) a computer-readable medium containing program code for performing the method of exchanging obligations (the media claims)." Id. at 2353. After following the two-step approach, the Court held that the claimed method added "nothing of substance to the underlying

abstract idea" of intermediated settlement, and ruled that the patent was invalid under § 101. Id. at 2360.

Although the Supreme Court has not determined "the precise contours of the 'abstract ideas' category," Alice, 134 S. Ct. at 2357, here, the '431 Patent falls squarely within the Alice/Bilski line of cases. These cases hold that a mere description of a business method, directed to an abstract idea like risk hedging or intermediated settlement, even in conjunction with a mathematical formula requiring generic computer implementation, fails to transform the abstract idea into a patent-eligible invention. See Mortg. Grader, Inc. v. First Choice Loan Servs., Inc., 811 F.3d 1314, 1324 (Fed. Cir. 2016) (claims "recite nothing more than the collection of information to generate a 'credit grading' and to facilitate anonymous loan shopping"); Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 716 (Fed. Cir. 2014) (abstract idea of "using advertising as a currency" on the Internet); Timeplay, Inc. v. Audience Entm't LLC, No. CV1505202SJOJCX, 2015 WL 9695321, at *4 (C.D. Cal. Nov. 10, 2015) ("[C]laims drawn to mathematical formulae, algorithms, and fundamental economic practices such as intermediated settlement and risk hedging [are] directed to 'abstract ideas' even where such claims contained computer elements.").

With this case law in mind, this Court concludes at step
one that the '431 Patent claims are directed at forecasting
intermittent demand, an abstract idea, analogous to the risk
hedging in Bilski and intermediated settlement in Alice. At step
two, the '431 Patent describes a method for implementing an
abstract idea (Claim 1), claims a software product with means to
perform the necessary calculations (Claim 10), and describes a
generic computer system to carry out the entire process (Claim
16). Simply "implementing a mathematical principle on a physical
machine, namely a computer, is not a patentable application of
that principle." Alice, 134 S. Ct. at 2357; see also Bancorp,
687 F.3d at 1278 (finding the computer "required by some of
Bancorp's claims is employed only for its most basic function,
the performance of repetitive calculations, and as such does not
impose meaningful limits on the scope of those claims");
CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1373
(Fed. Cir. 2011) ("Methods which can be performed entirely in
the human mind are unpatentable . . . because computational
methods which can be performed entirely in the human mind are
the types of methods that embody the 'basic tools of scientific
and technological work' that are free to all men and reserved
exclusively to none." (emphasis in original) (quoting Benson,
409 U.S. at 67). Although the Supreme Court did not create a
categorical exclusion for business method patents, see Bilski,

561 U.S. at 607, the patent must still provide some inventive concept sufficient to transform the claimed abstract idea into patentable subject matter.

Issued over thirteen years before <u>Alice</u>, the '431 Patent fails to provide the necessary inventive concept. Post-<u>Alice</u>, when analyzing a method patent under § 101, courts look at various factors, including whether the computer program was directed at operating a physical device. <u>See</u> <u>Chamberlain Grp.,</u> <u>Inc. v. Linear LLC</u>, 114 F. Supp. 3d 614, 625-26 (N.D. Ill. 2015) (emphasizing that because the computer program was directed at operating a physical device, and not the type of method that is "capable of being performed mentally," it was not the type of abstract idea that fell outside of § 101 eligibility). If the method is directed at a computer, courts will also look for an improvement to the functioning of the computer itself for the necessary inventive concept. <u>See</u> <u>Mortg. Grader</u>, 811 F.3d at 1324-25 (ruling if "[n]othing in the asserted claims purports to improve the functioning of the computer itself or effect an improvement in any other technology or technical field," then merely adding a computer to the claims does not provide an inventive concept sufficient to make the abstract idea patent-eligible). The claims in the '431 Patent neither control a physical device nor improve the functioning of the claimed computer.

14

The plaintiff relies chiefly on the pre-Alice case of Diamond v. Diehr, 450 U.S. 175, 184 (1981), which analyzed whether a patent claiming a method for transforming raw, uncured synthetic rubber, into a different state or thing through the use of a mathematical formula was properly patentable under § 101. The Supreme Court, while acknowledging that a mathematical equation was not patentable in isolation, ruled that the claimed method which employed that mathematical formula was properly patentable. Id. at 191-92. The Court held that "when a claim containing a mathematical formula implements or applies that formula in a structure or process which, when considered as a whole, is performing a function which the patent laws were designed to protect (e.g., transforming or reducing an article to a different state or thing), then the claim satisfies the requirements of § 101." Id. at 192. "While a scientific truth, or the mathematical expression of it, is not a patentable invention, a novel and useful structure created with the aid of knowledge of scientific truth may be." Id. at 188 (quoting Mackay Radio & Telegraph Co. v. Radio of Am., 306 U.S. 86, 94 (1939)). In Alice, the Supreme Court explained, "the claims in Diehr were patent eligible because they improved an existing technological process, not because they were implemented on a computer." 134 S. Ct. at 2358.

Similarly the plaintiff relies on DDR Holdings, LLC v.
Hotels.com, L.P., 773 F.3d 1245, 1248 (Fed. Cir. 2014), where
the patent disclosed a system that provided a solution to the
well-known problem of third-party merchants on the internet
luring the host website's visitors away from the host website
through the use of hyperlinks in advertisements. The patent's
claims addressed "the problem of retaining website visitors
that, if adhering to the routine, conventional functioning of
Internet hyperlink protocol, would be instantly transported away
from a host's website after 'clicking' on an advertisement and
activating a hyperlink." Id. at 1257. The Federal Circuit held
that the patent's claims "stand apart because they do not merely
recite the performance of some business practice known from the
pre-Internet world along with the requirement to perform it on
the Internet. Instead, the claimed solution is necessarily
rooted in computer technology in order to overcome a problem
specifically arising in the realm of computer networks." Id. The
claims "specify how interactions with the Internet are
manipulated to yield a desired result—a result that overrides
the routine and conventional sequence of events ordinarily
triggered by the click of a hyperlink." Id. at 1258.

Here, the '431 Patent does not apply a mathematical formula
to transform an article into a different state or thing,
considerations that the Diehr Court relied on in reaching its

16

holding. Unlike the invention in DDR, the '431 Patent does not purport to improve the functioning of the computer itself. Instead, the '431 Patent claims involve a generic computer that performs calculations based on standard statistical methods that could be performed by a human. Because Diehr and DDR are readily distinguishable, they do not save the '431 Patent from invalidity.

Nor does the fact that Claim 10 of the '431 Patent is a means-plus-function claim alter the analysis. "Construction of a means-plus-function limitation includes two steps." Noah Sys., Inc. v. Intuit, Inc., 675 F.3d 1302, 1311 (Fed. Cir. 2012). "First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs the function." Id. The plaintiff has poorly briefed this issue. It failed to provide the Court with any specific corresponding structures in the specification that would plausibly provide a meaningful limitation sufficient to transform an abstract idea into patent-eligible subject matter under § 101.

### ORDER

The Court **ALLOWS** the defendant's motion to dismiss (Docket No. 23).

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge